UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANN JOHNSON, AS THE REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSONS, AND ON BEHALF OF THE ROYAL CARIBBEAN CRUISES LTD. RETIREMENT SAVINGS PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>RUSSELL INVESTMENTS TRUST COMPANY (F/K/A RUSSELL TRUST COMPANY), ROYAL CARIBBEAN CRUISES LTD., and ROYAL CARIBBEAN CRUISES LTD. INVESTMENT COMMITTEE,<br><br>Defendants. | CASE NO. 2:21-cv-00743-DGE<br><br>ORDER GRANTING MOTION TO TRANSFER VENUE |

This matter comes before the Court on Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee's (collectively "Royal Caribbean Defendants") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 46) and Defendant Russell Investments Trust Company's (F/K/A Russell Trust Company) ("Russell") Notice of Consent to

ORDER GRANTING MOTION TO TRANSFER VENUE - 1

the Royal Caribbean Defendants' Motion to Transfer Venue (Dkt. No. 48).  The Court has considered the pleadings filed regarding the motion and the remaining file.

In this putative nationwide class action, Plaintiff alleges the Defendants breached their fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et. seq.*, by "imprudently adopting and maintaining an investment lineup consisting exclusively of poorly performing proprietary funds affiliated with Russell."  (Dkt. Nos. 1 and 31.)  Plaintiff seeks certification as a class action, damages, attorneys' fees and expenses.  (*Id.*)  The Royal Caribbean Defendants and Plaintiff are alleged to be residents of Florida and Russell is a Seattle based company.  (*Id.*)  Defendants now move to transfer venue to the United States District Court for the Southern District of Florida.  (Dkt. No. 46.)  For the reasons provided below, the motion (Dkt. No. 46) should be granted.

## I.   FACTS

Plaintiff filed this case on June 7, 2021, on behalf of herself and all participants in and beneficiaries of the Royal Caribbean Cruises, Ltd. Retirement Savings Plan ("Plan").  (Dkt. Nos. 1, 31.)  The following facts are drawn from her Amended Complaint (Dkt. No. 31).

The Plan holds the retirement savings of more than 7,000 non-union employees.  (Dkt. No. 31 at 2-3.)  At year-end in 2015, the Plan held around $300 million.  (*Id.* at 3.)  It is an "employee pension benefit plan" and a "defined contribution" or "individual account" plan under ERISA.  (*Id.* at 6 (*citing* 29 U.S.C. § 1002(2)(A) and (34)).)  As a defined contribution plan, the Plan provides participants retirement benefits "that are 'limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses.'"  (*Id.* (quoting *Tibble v. Edison Intern,* 575 U.S. 523, 525 (2015)).)  The Plan is an "ERISA section 404(c) plan," which gives participants investment

1  options from an "investment menu" made available by the Plan's fiduciaries. (*Id.* at 6.)  Until
2  late 2015, the Plan investment menu included 20 funds which were managed by a variety of
3  investment managers. (Dkt. No. 31 at 9.)
4        The Amended Complaint alleges around September 30, 2015, the Royal Caribbean
5  Defendants hired Russell as its "fiduciary outsourcing partner under the procedures established
6  by ERISA § 3(38)" despite Russell underperforming the investment managers that were
7  managing the Plan. (*Id.* at 7.)  At that point, all investment managers were replaced by Russell.
8  (*Id.*)  They are asserted to have authorized Russell to only use Russell funds in the Plan. (*Id.* at
9  9.)  Russell assumed control of the Plan's investment menu and 99% of the Plan's assets were
10  transferred into Russell's own "proprietary funds." (*Id.*)  While under Russell control, the Plan
11  did poorly compared to other funds, and the Royal Caribbean Defendants replaced Russell in
12  2019. (*Id.* at 11.)  Whether compared to the time before Russell took control or after it was
13  relieved, the Amended Complaint alleges that "a prudent and loyal fiduciary would not have
14  selected the Russell target fund dates for the Plan." (*Id.* at 17.)
15        According to the Amended Complaint, Russell's selection and retention of its own funds
16  were not for the good of the Plan, but to "maintain an otherwise declining asset base." (*Id.* at
17  18.)  "[A] fund's size determines the expense ratio that the manager can offer in the
18  marketplace." (*Id.* at 19.)  Russell needed to maintain or increase their asset base in order to
19  charge competitive fees. (*Id.*)  In 2016 and subsequent years, large investors left Russell's funds,
20  furthering the pressure for Russell to keep the Plan's assets in the underperforming Russell
21  funds. (*Id.*) "Russell's self-serving fund retention . . . cost participants millions of dollars in
22  retirement savings." (*Id.* at 20.)  Russell breached its fiduciary duties and was not acting "solely
23
24

ORDER GRANTING MOTION TO TRANSFER VENUE - 3

1  in the interest of the participants and beneficiaries" of the Plan as required under ERISA.  (*Id.* at
2  24.)
3       The Amended Complaint asserts that "based on Russell's poor reputation as an
4  investment manager and the poor performance of the Russell funds, a prudent plan fiduciary
5  would not have selected Russell as the Plan's delegated investment manager."  (*Id.* at 20-21.)
6  The Royal Caribbean Defendants were not "prudently monitoring" Russell and did not "swiftly
7  intervene" contrary to their fiduciary duties under ERISA.  (*Id.*)  Plaintiff did not know the
8  Defendants breached their fiduciary duties until just before this case was filed.  (*Id.* at 22.)
9       The Defendants now move to transfer venue to the Southern District of Florida.  (Dkt.
10 Nos. 46, 48.)  The Plaintiff responded and opposes the motion.  (Dkt. No. 57.)  The Royal
11 Caribbean Defendants filed a reply (Dkt. No. 59) and the motion is ripe for consideration.

12                    **II.     DISCUSSION**

13    **A.  STANDARD**

14       Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the
15 interest of justice, a district court may transfer any civil action to any other district or division
16 where it might have been brought or to any district or division to which all parties have
17 consented."
18       The parties do not dispute that the case might have been brought in the U.S. District
19 Court for the Southern District of Florida.  The parties disagree on whether transfer to that
20 district would be appropriate for the convenience of the parties and witnesses and would be "in
21 the interest of justice."
22    **B.  TRANSFER IN THE INTEREST OF CONVENIENCE AND JUSTICE**
23
24

ORDER GRANTING MOTION TO TRANSFER VENUE - 4

When deciding whether transfer is appropriate "[f]or the convenience of parties and witnesses," and "in the interest of justice," courts may consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-499 (9th Cir. 2000). Considerations of public policy may also be relevant. *Id.* As the parties seeking to transfer the case, the Defendants have the burden to show that the Southern District of Florida is the more appropriate forum for this case. *Id.* at 499.

  1. <u>Location Where Relevant Agreements were Negotiated and Executed</u>

The first factor, where the relevant agreements were negotiated and executed, favors transfer. The Royal Caribbean Defendants point out that the Plan document was approved and executed in Miami, Florida. (Dkt. No 47.) The Plan is administered in Miami, Florida. (*Id.*) The Request for Proposal for investment management services also came from Miami, Florida. (*Id.*). Although Plaintiff argues the operative Investment Management Agreement ("IMA") between Russell and the Royal Caribbean Defendants was created in Seattle (Dkt. No. 57), the parties assert that it was negotiated and executed in different states (both Washington and Florida) (Dkt. Nos. 47, 57). Given the use of modern technology in business deals, the Court sees no reason to question the parties' statements.

Plaintiff also argues that a because the majority of allegations concern Russell, the bulk of the documents it will seek in this case will be from Seattle-based Russell. (Dkt. No. 57.) In this age of electronically stored documents, the location of these documents is of little concern.

ORDER GRANTING MOTION TO TRANSFER VENUE - 5

1  Electronic documents may be easily transported.  Where the IMA was negotiated and executed
2  and the location of documents is of little help in deciding the motion.
3  　　　　　　　　2.　State that is Most Familiar with Governing Law
4  　　　The second factor, the state that is most familiar with governing law, weighs in favor of
5  transfer.  The Plaintiff points out that she brings only ERISA based claims, and these are claims
6  that either federal court can handle.  This does not account for other issues of law that may come
7  up.  The Plan document provides that it "shall be construed and administered according to the
8  laws of the state of Florida to the extent that such laws are not preempted by the law of the
9  United States of America." (Dkt. No. 47.)  Issues of Florida law can best be resolved in a
10 Florida court.  *See Mayfield v. ACE Am. Ins. Co.,* 2019 WL 2084489 (W.D. Wash. May 13,
11 2019), *reconsideration denied,* 2019 WL 2248099 (W.D. Wash. May 24, 2019).  This factor
12 weighs in favor of transfer to Florida.
13 　　　　　　　　3.　Plaintiff's Choice of Forum
14 　　　Plaintiff's choice of forum weighs minimally against transfer.  Plaintiff points out that a
15 plaintiff bringing an ERISA case is ordinarily entitled to "great deference" in their choice of
16 forum.  (Dkt. No. 57 at 14 (*citing Jacobson v. Hughs Aircraft Co.,* 105 F.3d 1288, 1302 (9th Cir.
17 1997), *rev'd on other grounds,* 525 U.S. 432 (1999)).)  The *Jacobson* court goes on to explain
18 that "this deference is one of several factors a court must consider when ruling on a motion to
19 transfer venue" and upheld the change in venue in that case.  *Id.*  District courts in the Ninth
20 Circuit have found that this "great" deference is diminished where, as here, a plaintiff's choice of
21 venue is not their residence and where they purport to sue on behalf of a national class.  *See*
22 *Burgess v. HP, Inc.* 2017 WL 467845, at 6 (N.D. Cal. Feb. 3, 2017); *Lowell v. United Behav.*
23 *Health,* 2020 WL 3504624, at 1 (N.D. Cal. June 29, 2020).  Plaintiff, a Florida resident, is
24

ORDER GRANTING MOTION TO TRANSFER VENUE - 6

seeking to represent a nationwide class. She is entitled to little deference in her choice of venue, so this factor is of marginal weight.

### 4. Respective Parties' Contacts with the Forum

The fourth factor, the respective parties' contacts with the forum, weighs in favor of transfer. While Russell is a Seattle based company, it has consented to transferring this case to Florida. By so doing, Russell indicates that the Southern District of Florida is not an inconvenient forum for it or potential Russell witnesses. Plaintiff points out that the Royal Caribbean Defendants operate a port in Seattle. The Royal Caribbean Defendants note that they run only 2% of their cruises from that port. (Dkt. No. 59.) The Royal Caribbean Defendants also indicate that the Southern District of Florida is not an inconvenient forum for it. Further, Plaintiff, and many (if not the majority), of the potential class members, reside in Florida. (Dkt. No. 47 at 3.) Defendants point out that less than 1% of potential class members reside in Washington. (*Id.*) This factor favors transfer.

### 5. The Contacts relating to Plaintiff's Cause of Action in the Chosen Forum

The fifth factor also weighs in favor of transfer. While Russell's contacts with the Western District of Washington relate to Plaintiff's ERISA claims here, Russell has consented to the change of venue. Further, not all of Russell's potential witnesses are in Washington. The Royal Caribbean Defendants point out that at least half of the Russell witnesses that they propose to investigate are located in Russell's New York and Illinois offices. (Dkt. No. 61.) Plaintiff's ERISA claims against the Royal Caribbean Defendants relate to those Defendants' conduct in Florida, not Washington. The Plan was administered in Florida. (Dkt. No. 47.) The Royal Caribbean Defendants have shown that this factor weighs in favor of transfer.

### 6. Difference in Costs of Litigation in the Two Forums

The cost of litigating in either the Western District of Washington or in the Southern District of Florida does not favor or disfavor transfer. While there are Russell witnesses located in Washington, the Royal Caribbean Defendants have shown that there are also several Russell witnesses located in New York and Illinois. (Dkt. No. 61.) Discovery related to those witnesses would require travel out of either forum. All of the Royal Caribbean Defendants' witnesses are in Miami, Florida. (Dkt. No. 47.) A majority or close to a majority, of potential class members reside in Florida. (*Id.*) If the case is certified as a class action, it would be much easier for class members to attend proceedings, like settlement approval hearings, if they are held in Florida.

Plaintiff argues that it will take her longer to litigate the case in Florida due to Eleventh Circuit Court of Appeals interpretation of law which requires that she exhaust her administrative remedies. (Dkt. No. 57.) She maintains that because the Ninth Circuit Court of Appeals has no such requirement, litigation will likely move more quickly in this district. (*Id.*) A difference in law between the circuits is not a valid reason to transfer or not transfer a case. "A plaintiff may not resist the transfer of his action to another district court on the ground that the transferee court will or may interpret federal law in a manner less favorable to him." *H. L. Green Co. v. MacMahon*, 312 F.2d 650, 652 (2nd Cir. 1962). Further, exhaustion of administrative remedies may speed the parties to resolution. The cost of litigating in either forum does not favor or disfavor transfer.

      7. <u>Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses</u>

The seventh factor, the availability of a compulsory process to compel non-party witnesses to testify, is also neutral. Plaintiff argues that there may be some third-party Russell affiliates who are unwilling to travel to Florida to testify. At this point in the proceedings it is unclear whether such affiliates exist and where they are located. The Royal Caribbean

ORDER GRANTING MOTION TO TRANSFER VENUE - 8

Defendants point to several Russell witnesses from the New York and Illinois offices. Neither forum has an advantage in compelling those individuals to testify. This factor is neutral.

### 8. Ease of Access to Sources of Proof

The eighth factor, ease of access to sources of proof, does not favor or disfavor transfer. Based on the parties' submissions, documents in this case are located in both Washington and Florida. As stated above, in this era of electronically stored documents, the cost of producing documents in this forum as opposed to Florida is minimal.

Defendants have shown that depositions maybe be necessary in both Washington, Florida, New York, and Illinois. Plaintiff, who seeks to represent a nationwide class, is represented by counsel in located in Washington, Florida, and Minneapolis, ensuring she has local counsel for Washington depositions, if they are necessary. Access to sources of proof is a neutral factor.

### 9. Court Congestion and Public Policy

The relative congestion of the two forums' courts is not helpful in determining whether to transfer the case. The Royal Caribbean Defendants point out that as of June 30, 2021, the Western District of Washington had a median of 22.2 months from filing to trial for civil cases and the Southern District of Florida's median time was 17.5 months. (Dkt. No. 46.) Plaintiff notes that, because of the requirement that she exhaust her administrative remedies, Florida may take longer to bring the case to resolution. The parties also discuss judicial vacancies in both venues. Both this district and the Southern District of Florida have two judicial vacancies. United States Courts, Current Judicial Vacancies, https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last visited on March 10, 2022). Nominations for the Washington vacancies have been recently made, but there are no

ORDER GRANTING MOTION TO TRANSFER VENUE - 9

nominations for the Florida vacancies yet. *Id.* The Washington nominations are relatively recent and have not been approved by Congress. Consideration of the median time to trial or judicial vacancies is not particularly helpful in deciding whether transfer of the case is appropriate.

Public policy considerations support transferring this case to Florida. While Washington has an interest in ensuring that Washington businesses comply with the law, Florida has a more substantial interest in this case. This case involves a Florida business and that business' treatment of the retirement funds of its employees, a substantial number of which are Florida residents. *See Bloom v. Express Servs. Inc.*, 2011 WL 1481402, at *5 (N.D. Cal. Apr. 19, 2011). Moreover, Russell's relationship with the Plaintiff and potential class members has stopped. For many of the potential class members, their relationship with Royal Caribbean is ongoing. Florida has the stronger interest in this case.

## C. CONCLUSION

The Royal Caribbean Defendants have sufficiently shown that transfer of this case is appropriate "[f]or the convenience of parties and witnesses," and "in the interest of justice" under 28 U.S.C. § 1404(a). The case should be transferred to the Southern District of Florida.

## III. ORDER

It is hereby **ORDERED** that:

- Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 46) **IS GRANTED**; and

- This case **IS TRANSFERRED** to the U.S. District Court for the Southern District of Florida.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 15th day of March, 2022.

*[signature]*

David G. Estudillo
United States District Judge