**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No.: 1:22-cv-21735-RNS**

ANN JOHNSON, AS THE REPRESENTATIVE OF
A CLASS OF SIMILARLY SITUATED PERSONS,
AND ON BEHALF OF THE ROYAL CARIBBEAN
CRUISES LTD. RETIREMENT SAVINGS PLAN,

      Plaintiff,

v.

RUSSELL INVESTMENTS TRUST COMPANY
(F/K/A RUSSELL TRUST COMPANY), ROYAL
CARIBBEAN CRUISES LTD., AND ROYAL
CARIBBEAN CRUISES LTD. INVESTMENT
COMMITTEE,

      Defendants.

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL CLASS ACTION SETTLEMENT WITH DEFENDANT RUSSELL
INVESTMENTS TRUST COMPANY AND INCORPORATED MEMORANDUM OF
LAW**

## <u>TABLE OF CONTENTS</u>

MOTION.................................................................................................................................1

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

I.      PLEADINGS AND ADMINISTRATIVE EXHAUSTION..................................................................2

II.     DISCOVERY, CLASS CERTIFICATION, SUMMARY JUDGMENT, APPEAL, AND SETTLEMENT....3

III.    OVERVIEW OF SETTLEMENT TERMS......................................................................................4

     A.  THE SETTLEMENT CLASS ..............................................................................................4

     B.  MONETARY RELIEF .......................................................................................................4

     C.  RELEASE OF CLAIMS AND BAR ORDER ........................................................................5

     D.  CLASS NOTICE AND SETTLEMENT ADMINISTRATION .....................................................6

     E.  ATTORNEYS' FEES AND EXPENSES.................................................................................7

ARGUMENT ..........................................................................................................................7

I.      LEGAL STANDARD .............................................................................................................7

II.     THE COURT SHOULD APPROVE THE SETTLEMENT UNDER RULE 23(E) ..............................9

     A.  The Class Representatives and Class Counsel Have Adequately Represented the Settlement Class.......................................................................................................9

     B.  The Partial Settlement Is the Product of Arm's-Length Negotiations Between Experienced, Capable Counsel ...................................................................................9

     C.  In Light of the Risk of Zero Recovery, the Partial Settlement Provides Adequate Relief to the Class.................................................................................................10

          1.  The Stage of Litigation Favors Preliminary Approval .........................................11

          2.  The Costs, Risks, and Delay of Further Litigation Strongly Favors Preliminary Approval ..............................................................................................................12

          3.  The Value of Recovery Strongly Favors Preliminary Approval ...........................14

          4.  The Proposed Plan of Allocation is Efficient and Effective.................................15

5.   The Terms Concerning Attorneys' Fees and Costs Are Fair................................15

6.   There Are No Other Agreements Precluding Preliminary Approval....................16

D.   The Partial Settlement Treats Settlement Class Members Equitably ...............................17

III.   THE NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED........................................17

IV.   THE SETTLEMENT CLASS IS CONSISTENT WITH THE CERTIFIED CLASS.............................18

V.   THE COURT SHOULD ENTER AN APPROPRIATE BAR ORDER ................................................19

CONCLUSION....................................................................................................................................20

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Abbott v. Lockheed Martin Corp.*,
    2015 WL 4398475 (S.D. Ill. July 17, 2015) ...................................................................12

*Assoc. for Disabled Ams., Inc., v. Amoco Oil Co.*,
    2011 F.R.D. 457 (S.D. Fla. 2002) ...............................................................................14

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988),
    *aff'd*, 899 F.2d 21 (11th Cir. 1990) ...............................................................13, 15

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ...............................................................................7, 8, 9

*Berman v. Smith*,
    510 B.R. 387 (S.D. Fla. 2014) .............................................................................20

*Borcea v. Carnival Corp.*,
    238 F.R.D. 664 (S.D. Fla. 2006) ...............................................................7, 10, 14, 15

*Bowers v. Russell*, No.
    1:22-CV-10457, ECF No. 575 (D. Mass Sept. 5, 2025) ...................................20

*Braynen v. Nat'l Mortg.*,
    2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) .......................................................10

*Brotherston v. Putnam Invs., LLC*,
    No. 1:15-cv-13825-WGY, ECF No. 220 (D. Mass. Apr. 29, 2020) ...................18

*Burrow v. Forjas Taurus S.A.*,
    2019 WL 4247284 (S.D. Fla. Sept. 6, 2019) ...............................................14, 15

*Chesemore v. All. Holdings, Inc.*,
    2014 WL 4415919 (W.D. Wis. Sept. 5, 2014),
    *aff'd sub nom. Chesemore v. Fenkell*,
    829 F.3d 803 (7th Cir. 2016) ...............................................................................17

*Colon v. Johnson*,
    2024 WL 3315628 (M.D. Fla. May 31, 2024),
    *report and recommendation adopted*, 2024 WL 2890817 (M.D. Fla. June 10, 2024) ......16

*Desue v. 20/20 Eye Care Network, Inc.*,
    2023 WL 4420348 (S.D. Fla. July 8, 2023) .......................................................11

iv

*Eichenholtz v. Brennan*,
52 F.3d 478 (3d Cir. 1995)...............................................................................20

*Ferron v. Kraft Heinz Foods Co.*,
2021 WL 2940240 (S.D. Fla. July 13, 2021).............................................10, 15

*Franklin v. Kaypro Corp.*,
884 F.2d 1222 (9th Cir. 1989) .........................................................................20

*Gerber v. MTC Elec. Techs. Co.*,
329 F.3d 297 (2d Cir. 2003)..............................................................................20

*Gevaerts v. TD Bank*,
2015 WL 6751061 (S.D. Fla. Nov. 5, 2015).....................................................16

*Hill v. State St. Corp.*,
2015 WL 127728 (D. Mass. Jan. 8, 2015) ........................................................16

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ......................................................................14

*In re Checking Acct. Overdraft Litig.*,
275 F.R.D. 654 (S.D. Fla. 2011) .......................................................................10

*In re Forta File Transfer Software Data Sec. Breach Litig.*,
2024 WL 5362098 (S.D. Fla. Sept. 24, 2024) ...............................................7, 9

*In re Greektown Holdings, LLC*,
728 F.3d 567 (6th Cir. 2013) ......................................................................19, 20

*In re Jiangbo Pharms., Inc.*,
520 B.R. 316 (Bankr. S.D. Fla. 2014),
*aff'd sub nom*, *Brophy v. Salkin*, 550 B.R. 595 (S.D. Fla 2015).......................19

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ............................................................................19

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
2024 WL 4415214 (S.D. Fla. Oct. 5, 2024)..........................................8, 10, 13

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) ................................................................12, 19, 20

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)..............................................................................12

*Johnson v. Russell Invs. Tr. Co.*
    *appeal docketed*, No. 25-10692 (11th Cir. Mar. 4, 2025) ............................................ 12, 13

*Kaplan v. Houlihan Smith & Co.*,
    2014 WL 2808801 (N.D. Ill. June 20, 2014) ................................................................... 17

*Krueger v. Ameriprise*,
    2015 WL 4246879 (D. Minn. July 13, 2015) .................................................................. 12

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ........................................................................... 11

*McDermott, Inc. v. AmClyde*,
    511 U.S. 202, 217 (1994) ................................................................................................. 20

*M.D. v. Centene Corp., Inc.*,
    2020 WL 7585033 (S.D. Fla. Oct. 7, 2020) .................................................................... 14

*Millstein v. Holtz*,
    2022 WL 18024840 (S.D. Fla. Dec. 30, 2022) ......................................... 10, 11, 12, 13, 14

*Moreno v. Deutsche Bank Americas Holding Corp.*,
    2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) .................................................................... 9

*Moreno v. Deutsche Bank*,
    No. 1:15-cv-09936-LGS, ECF No. 335 (S.D.N.Y. Oct. 9, 2018) ................................... 18

*Morgan v. Pub. Storage*,
    301 F. Supp. 3d 1237 (S.D. Fla. 2016) ........................................................................... 16

*Morris v. US Foods, Inc.*,
    2021 WL 2954741 (M.D. Fla. May 17, 2021) ............................................................. 7, 8

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) ........................................................................... 11

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................................................ 17

*Pinnock-Lee v. Phelan Hallinan, PLC*,
    2015 WL 13776282 (S.D. Fla. June 26, 2015) ............................................................... 17

*Ponzio v. Pinon*,
    87 F.4th 487 (11th Cir. 2023) ........................................................................................... 8

*Reetz v. Lowe's Cos.*,

No. 5:18-cv-00075-KDB-DCK, ECF No. 234 (W.D.N.C. June 9, 2021) ........................18

*Shanechian v. Macy's*,
2013 WL 12178108 (S.D. Ohio June 25, 2013) .............................................................12

*Sims v. BB&T Corp.*,
Nos. 1:15-cv-732, 1:15-cv-841, ECF No. 439 (M.D.N.C. Dec. 13, 2018).......................18

*Sims v. BB&T Corp.*,
2019 WL 1993519 (M.D.N.C. May 6, 2019) ...................................................................16

*Smith v. Wm. Wrigley Jr. Co.*,
2010 WL 2401149 (S.D. Fla. June 15, 2010) ..................................................7, 8, 11, 12

*Strube v. American Equity Inv. Life Ins. Co.*,
226 F.R.D. 688 (M.D. Fla. 2005)....................................................................................15

*Taylor v. Serv. Corp. Int'l*,
2023 WL 2346295 (S.D. Fla. Mar. 3, 2023)....................................................................12

*Tibble v. Edison Int'l*,
2017 WL 3523737 (C.D. Cal. Aug. 16, 2017)...................................................................12

*Tussey v. ABB Inc.*,
2017 WL 6343803 (W.D. Mo. Dec. 12, 2017)...................................................................12

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
2018 WL 3000490 (C.D. Cal. Feb. 6, 2018)....................................................................18

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) ......................................................................................16

**Rules, Regulations, and Statutes**

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................................17

Fed. R. Civ. P. 23(e)(1).....................................................................................................17

Fed. R. Civ. P. 23(e)(2)......................................................................................................8

Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment......................8

Fed. R. Civ. P. 23(e)(2)(A) .................................................................................................9

Fed. R. Civ. P. 23(e)(2)(B) .................................................................................................9

Fed. R. Civ. P. 23(e)(2)(C) ...........................................................................................10, 11

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................17

**Other Authorities**

Restatement (Third) of Torts: Apportionment Liab. § 16, cmt. c (2000) .....................................20

## MOTION

Plaintiff Ann Johnson ("Plaintiff"), as representative of the class previously certified by the Court (*see* ECF No. 161) and on behalf of the Royal Caribbean Cruises, Ltd. Retirement Savings Plan (the "Plan"), respectfully moves this Court for an Order: (1) preliminarily approving the Settling Parties' Partial Class Action Settlement Agreement; (2) approving the proposed Notices of Settlement and authorizing distribution of the Notices; (3) scheduling a Fairness Hearing; and (4) granting such other relief as set forth in the proposed Preliminary Approval Order submitted herewith, including a preliminary bar order consistent with Paragraph 2.4(g) of the Partial Class Action Settlement Agreement.

This motion is made pursuant to Federal Rule of Civil Procedure 23(e), and is based on the accompanying Memorandum of Law and authorities, the Declaration of Brock J. Specht and exhibits thereto, the Settlement Agreement, and all files, records, and proceedings in this matter.

## INTRODUCTION

After over four years of hard-fought litigation, Plaintiff Ann Johnson ("Plaintiff") has reached a partial settlement of these class action claims with Defendant Russell Investments Trust Company ("Russell") in this Employee Retirement Income Savings Act ("ERISA") class action relating to the Royal Caribbean Cruises Ltd. Retirement Savings Plan ("Plan") and the Russell Funds.[1] While the claims against Defendants Royal Caribbean Cruises Ltd. ("Royal Caribbean") and the Royal Caribbean Cruises Ltd. Investment Committee ("Committee") (collectively, the "Non-Settling Defendants") remain subject to a pending appeal and are not released, this partial settlement represents a significant recovery in a case in which summary judgment was already granted in favor of Russell and allows Plaintiff to continue to pursue claims on behalf of the Plan

---

[1] A copy of the Partial Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as Exhibit A to the Declaration of Brock J. Specht ("Specht Decl.").

against the Non-Settling Defendants.

Under the proposed Settlement terms, Russell will pay a Gross Settlement Amount of $500,000.00 into a common fund for the benefit of the Settlement Class. As discussed below, the partial Settlement is fair, reasonable, and adequate, and it merits preliminary approval so that the proposed Notice can be sent to the Settlement Class. Among other things, the proposed partial Settlement merits preliminary approval because:

- The partial Settlement was negotiated at arm's length by experienced and capable counsel after extensive fact and expert discovery and a ruling on summary judgment;
- The proposed Settlement Class is consistent with the Court's order certifying the Rule 23 class;
- The partial Settlement provides for direct monetary relief that will be distributed fairly and equitably to Class Members;
- The partial Settlement proceeds will be allocated among Settlement Class Members pursuant to an efficient and equitable Plan of Allocation, under which current participants' Plan accounts will be automatically credited with their share of the proceeds and former participants will receive a check;
- The Released Claims are appropriately tailored to the claims that were asserted against Russell and preserve the claims against the Non-Settling Defendants;
- The proposed Notice provides a plain language explanation of the partial Settlement to Settlement Class Members and will be distributed by first-class mail; and
- The partial Settlement provides Settlement Class Members the opportunity to raise any objections to the Settlement and appear at the Fairness Hearing.

Accordingly, Plaintiff respectfully requests that the Court: (1) preliminarily approve the Settlement; (2) approve the proposed Notices and authorize distribution of the Notices; (3) schedule a final approval hearing; and (4) enter the accompanying Preliminary Approval Order, which incorporates an appropriate bar order. As a party to the Settlement, Russell does not oppose this motion. The Non-Settling Defendants also do not oppose this motion.

## BACKGROUND

### I.     PLEADINGS AND ADMINISTRATIVE EXHAUSTION

Plaintiff filed this action on June 7, 2021, in the Western District of Washington asserting claims against Defendants under ERISA. ECF No. 1. Plaintiff brought this action on behalf of the

Plan pursuant to 29 U.S.C. § 1132(a) to recover losses to the Plan under 29 U.S.C. § 1109(a) and to obtain other appropriate relief under ERISA. *Id.* On August 30, 2021, Plaintiff filed an Amended Complaint. ECF No. 31. On March 15, 2022, the District Court for the Western District of Washington entered an order transferring this case to the Southern District of Florida. ECF No. 68.

On June 30, 2022, the Court issued an Order staying the case to allow Plaintiff to proceed through the administrative claims process. ECF No. 96. On March 17, 2023, the Court issued an Order Reopening the case. ECF No. 108. Defendants filed answers to the Amended Complaint on April 19, 2023. ECF Nos. 109, 110.

## II.   DISCOVERY, CLASS CERTIFICATION, SUMMARY JUDGMENT, APPEAL, AND SETTLEMENT

The Settling Parties have engaged in extensive discovery. Russell produced more than 256,000 pages of documents, and Plaintiff produced over 12,000 pages of documents. *Specht Decl.* ¶ 12. Following fact discovery, the Settling Parties completed expert discovery, which entailed exchanging expert reports and conducting depositions of seven expert witnesses. *Id.* ¶ 16.

On August 1, 2024, the Court issued an Order Granting Plaintiff's Motion for Class Certification and certifying the following class:

> All participants and beneficiaries of the Royal Caribbean Cruises, Ltd. Retirement Savings Plan at any time on or after October 1, 2015 to the date Russell was removed as the Plan's investment manager.

ECF No. 161.

On October 18, 2024, Russell and the Non-Settling Defendants separately moved for summary judgment as to all claims. ECF Nos. 176, 179. On January 31, 2025, ten days before the action was scheduled for trial, the Court issued an Order granting both motions as to all claims. ECF No. 273; *see* ECF No. 134. On March 3, 2025, Plaintiff filed a notice of appeal. ECF No. 277.

Russell's Counsel and Class Counsel engaged in arm's-length settlement negotiations

throughout the life of this case, including attending a mediation with a nationally recognized mediator with experience in ERISA class actions. *Specht Decl*. ¶ 18. The Settling Parties eventually reached a settlement-in-principle while Plaintiff's appeal of the Court's summary judgment was pending. *Id.* ¶ 19. The Settling Parties then negotiated the details of the comprehensive Settlement Agreement that is the subject of the present motion. *Id.*

## III.  OVERVIEW OF SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement Agreement applies to the following Settlement Class:

> All participants and beneficiaries of the Royal Caribbean Cruises, Ltd. Retirement Savings Plan at any time on or after October 1, 2015 through May 23, 2019, who had any portion of their account invested in the Russell Funds.

*Settlement* ¶ 1.47. This Settlement Class is consistent with the class previously certified by the Court. ECF No. 161. Plaintiff estimates that roughly 10,000 Settlement Class Members were invested in Russell Funds during the Class Period. *Specht Decl*. ¶ 3.

### B.  Monetary Relief

Under the Settlement, Russell will pay a Gross Settlement Amount of $500,000.00 to a Qualified Settlement Fund (the "Settlement Fund") *Settlement* ¶¶ 1.25, 4.1-4.2. After deducting any Costs, Administrative Expenses, and Class Representative Service Awards approved by the Court, the Net Settlement Amount will be distributed to Settlement Class members in accordance with the Plan of Allocation in the Settlement. *Id.* ¶¶ 1.27, 5.2, 5.3, 5.4.

The Plan of Allocation assigns an Average Settlement Score to each eligible Settlement Class Member for each quarter during the Class Period based on their aggregate quarter-ending account balance. *Id*. ¶ 5.1. Each Settlement Class Member will then receive a *pro rata* share of the Net Settlement Amount based on their Average Settlement Score compared to the sum of all Participant Class Members' and Former Participant Class Members' Average Settlement Scores

4

("Entitlement Amount"). *Id.* If the dollar amount of the settlement payment to a Former Participant Class Member is calculated by the Settlement Administrator to be less than $5.00, then that Former Participant Class Member's pro-rata share shall be zero for all purposes, and his or her share shall be reallocated amongst the other Settlement Class Members. *Id.*

The Plan accounts of Participant Class Members who are currently enrolled in the Plan will be automatically credited with their share of the Net Settlement Amount. *Id.* ¶ 5.2. Former Participant Class Members will receive their share via check. *Id.* ¶ 5.3. Any checks that are uncashed after 120 days will revert to the Qualified Settlement Fund to be used to defray administrative costs of the Plan and will not revert back to Russell. *Id.* ¶ 5.6.

**C.     Release of Claims and Bar Order**

In exchange for the relief provided by the Settlement, the Settlement Class will release Russell and affiliated persons and entities (the "Released Parties") from claims:

- that were asserted or could have been asserted in the Action against Russell, including but not limited to those based on: (1) the selection, retention, oversight or monitoring of the Russell Funds; (2) the selection, retention, oversight or monitoring of Russell; (3) the performance, fees, and other characteristics of the Russell Funds; (4) Russell's performance or fees, or the services provided by Russell to the Plan; (5) the restructuring or modification of the Plan's investment lineup; (6) any alleged self-dealing or prohibited transaction committed by Russell; (7) the structure, management, or monitoring of the Plan's investment menu; (8) the compliance with the Plan's governing documents; or (9) disclosure or failure to disclose information;
- that would be barred by *res judicata* based on the Court's entry of the Final Approval Order; or
- that arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan of Allocation.

*Id.* ¶ 1.31. Claims against the Non-Settling Defendants are not released by the Settlement. *Id.* Likewise, claims to enforce the Settlement Agreement, and claims for individual vested benefits that are due under the terms of the Plan are also not released. *Id.*

In addition, the Settlement includes the entry of a Bar Order to address potential claims for contribution or indemnity between Russell and the Non-Settling Defendants. *Id.* ¶ 2.4(g). Under

the terms of the proposed Bar Order: (i) Russell will be precluded from asserting any contribution or indemnification claims that it may have against the Non-Settling Defendants of any type arising from this Action to the extent the injury to Russell is its liability to the Named Plaintiff, Settlement Class Members, and/or the Plan (excluding contractual indemnity claims); (ii) the Non-Settling Defendants will be precluded from asserting any contribution or indemnification claims they may have against Russell arising from this Action to the extent the injury to the Non-Settling defendants is the Non-Settling Defendants' liability to the Named Plaintiff, Settlement Class Members, and/or the Plan (excluding contractual indemnity claims); and (iii) any judgment entered against the Non-Settling Defendants in the Action will be reduced by the greater of the Gross Settlement Amount or the amount that represents the proportionate share of fault that is attributable to Russell, if any, with respect to the judgment. *Id.*

> ### D.     Class Notice and Settlement Administration

Settlement Class Members will be sent notice of the partial settlement ("Notice") via U.S. Mail. *Id.* ¶ 3.2, *Exs. 1 & 2 to Settlement Agreement*. These Notices provide information to the Settlement Class regarding, among other things: (1) the nature of the claims in this Action; (2) the scope of the Settlement Class; (3) the terms of the Settlement; (4) class members' right to object to the partial settlement and the deadline for doing so; (5) the class release; (6) the proposed bar order; (7) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (8) the amount of the proposed service award to the Named Plaintiff as class representative; (9) the date, time, and location of the Fairness Hearing; and (10) class members' right to appear at the Fairness Hearing. *Id*.

To the extent that Settlement Class Members would like more information about the Settlement, the Settlement Administrator will establish a Settlement Website on which it will post the Notices, a copy of the operative Amended Complaint, all documents filed with the Court in

connection with the Settlement, and any other information mutually agreed upon by the Settling

Parties. *Id.* ¶ 3.3. Further, the Settlement Administrator will establish a toll-free telephone line

through which Settlement Class Members may contact the Settlement Administrator. *Id.* ¶ 3.3(c).

### E.      Attorneys' Fees and Expenses

The Settlement Agreement requires that Class Counsel file any motion for cost and

expenses at least 14 days before the objection deadline. *Id.* ¶ 6.1. As explained in the Notices that

will be sent to the Settlement Class, Class Counsel intends to seek only out-of-pocket costs and

settlement administration expenses incurred in this litigation, which Class Counsel estimates will

be approximately $350,000, and does not intend to seek attorneys' fees. *Id.* ¶ 6.1 & *Exs. 1 & 2*. In

addition, the Settlement Agreement provides for a Class Representative Service Award of up to

$5,000 to the Named Plaintiff, subject to Court approval. *Id.* ¶¶ 6.1–6.2. [2]

## ARGUMENT

## I.      LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement

agreement that will bind absent class members. "Judicial review of a proposed class action

settlement is a two-step process: preliminary approval and a subsequent fairness hearing." *Smith*

*v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (collecting cases).

At the preliminary approval stage, "the Court must preliminarily determine whether the

Settlement is fair, adequate, and reasonable." *In re Forta File Transfer Software Data Sec. Breach*

*Litig.*, 2024 WL 5362098, at *8 (S.D. Fla. Sept. 24, 2024). The "primary objective… is to establish

whether to direct notice of the proposed settlement to the class, invite the class's reaction, and

schedule a final fairness hearing." *Id.* (quoting *Morris v. US Foods, Inc.*, 2021 WL 2954741, at *7

---

[2] Class Counsel intends to file a motion for fees and costs detailing and further supporting these
requests in accordance with the schedule outlined in the Proposed Preliminary Approval Order.

(M.D. Fla. May 17, 2021)). "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (citing *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984)); *Ponzio v. Pinon*, 87 F.4th 487, 493–94 (11th Cir. 2023). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024 WL 4415214, at *3 (S.D. Fla. Oct. 5, 2024) (quoting *Smith*, 2010 WL 2401149, at *2).

In 2018, Rule 23(e) was amended "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision" of whether to approve a proposed settlement. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment. These four "core concerns" are: (1) the adequacy of representation, (2) the existence of arm's-length negotiations, (3) the adequacy of relief, and (4) the equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2); *see* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment; *Ponzio*, 87 F.4th at 494.

Within the Eleventh Circuit, "[t]he four core concerns set out in Rule 23(e)(2) provide the primary considerations in evaluating proposed agreements," *Ponzio*, 87 F.4th at 495, and are complemented, where appropriate, by the following *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Id.* at 494 (quoting *Bennett*, 737 F.2d at 986). "For example, *Bennett* factors (1), (2), (4), and (6) can inform 'whether the relief provided to the class is adequate' (core concern three). And *Bennett*

factors (3) and (5) can inform 'whether the proposal treats class members equitably relative to each other' (core concern four)." *Id.*

As discussed below, the pertinent factors overwhelmingly favor the preliminary approval.[3]

## II.    THE COURT SHOULD APPROVE THE SETTLEMENT UNDER RULE 23(e)

### A.    The Class Representatives and Class Counsel Have Adequately Represented the Settlement Class

The first Rule 23 factor evaluates whether the Class Representative and Class Counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). Here, the Class Representative and Class Counsel have faithfully done so.

First, the Named Plaintiff agreed to perform her duties as a class representative, and has fulfilled those duties throughout the course of the litigation. *See* ECF No. 149-1 at 2, 4; *see also* ECF No. 161 at 2.

Second, as this Court noted in its Order granting class certification and appointing Class Counsel, "there is no dispute that class counsel has significant experience in litigating ERISA class action cases such as this one and will adequately represent the class." ECF No. 161 at 2. Class Counsel are "experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans[.]" *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y. Sept. 5, 2017) (discussing Nichols Kaster); *see Specht Decl.* ¶¶ 21–23. At all times, Class Counsel has skillfully and adequately represented the Class.

### B.    The Partial Settlement Is the Product of Arm's-Length Negotiations Between Experienced, Capable Counsel

The second Rule 23 factor—whether the proposal was negotiated at arm's length—is also plainly satisfied. *See* Fed. R. Civ. P. 23(e)(2)(B). "Where the parties have negotiated at arm's

---

[3] The fifth *Bennett* factor "cannot be discerned at this time because Notice has not yet been given to the Settlement Class" and thus is reserved for the final approval stage. *In re Forta File Transfer Software Data Sec. Breach Litig.*, 2024 WL 5362098, at *9 n.4.

length, the Court should find that the settlement is not the product of collusion." *Millstein v. Holtz*, 2022 WL 18024840, at \*4 (S.D. Fla. Dec. 30, 2022) (quoting *Braynen v. Nat'l Mortg.*, 2015 WL 6872519, at \*10 (S.D. Fla. Nov. 9, 2015)); *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661–62 (S.D. Fla. 2011). That is the case here, where the partial Settlement "is the result of intensive, arm's-length negotiations among experienced attorneys who are familiar with class action litigation and the legal and factual issues of this lawsuit." *See Millstein*, 2022 WL 18024840, at \*4; *Specht Decl.* ¶ 18. In addition, "[t]he endorsement of well informed, experienced class action attorneys is strong support" for granting approval of a settlement. *Millstein*, 2022 WL 18024840, at \*6. As discussed above, Class Counsel has extensive experience in ERISA litigation with a proven track record. *See supra* at 9-10; *Specht Decl.* ¶¶ 21–23. This experience solidifies the fact that "Class Counsel had all the information needed to make an informed decision regarding the appropriateness of settlement." *In re Mednax Servs. Inc., Customer Data Breach Litig.*, 2024 WL 1554329, at \*7. Accordingly, this factor weighs in favor of granting preliminary approval.

### C. In Light of the Risk of Zero Recovery, the Partial Settlement Provides Adequate Relief to the Class

The third Rule 23 factor considers whether "the relief provided to the class is adequate," considering, *inter alia*, the stage of litigation; the costs, risks, and delay of further litigation, (including the likelihood of success at trial); and the range of possible recovery. Fed. R. Civ. P. 23(e)(2)(C); *see supra* at 8 ("*Bennett* factors (1), (2), (4), and (6) can inform 'whether the relief provided to the class is adequate' (core concern three).").[4] Relevant considerations also include

---

[4] *See also Borcea*, 238 F.R.D. at 673 (noting the first three *Bennett* factors are "closely related" and weigh the likelihood of success at trial against the likely range of recovery and the results achieved by the settlement); *Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240, at \* 10 (S.D. Fla. July 13, 2021) (noting the second and third *Bennett* factors "overlap, as a court first determines the possible range of recovery and then determines where in that range a fair, adequate, and reasonable settlement lies.") (citation omitted)

the effectiveness of any proposed distribution method, the terms of any proposed award of attorneys' fees, and the existence of any agreements made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii)–(iv).

Significantly, the adequacy of any settlement is necessarily viewed "against the backdrop of all of the uncertainties, risks, and problems that have surfaced in this litigation… and the reasonable possibility that Plaintiff[] would not have recovered anything if [she] had proceeded to trial." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007). Accordingly, the adequacy of the proposed partial Settlement in this case must be viewed in light of the fact that the Court has already granted judgment in Defendants' favor. In light of these circumstances and for the reasons that follow, the adequacy of relief strongly favors granting preliminary approval.

### 1.    The Stage of Litigation Favors Preliminary Approval

"Courts consider the stage of proceedings at which settlement is achieved 'to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.'" *Millstein*, 2022 WL 18024840, at *5 (quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005)). After exchanging hundreds of thousands of pages of documents, conducting ten depositions of fact witnesses and expert discovery involving seven experts, and receiving an adverse summary judgment ruling, there is no real question that Plaintiff has enough information to make an informed decision about settlement. *Specht Decl.* ¶¶ 11-13; 16-17. Settlements are regularly approved at earlier stages of litigation with less information about the strength of claims available. *See, e.g.*, *Desue v. 20/20 Eye Care Network, Inc.*, 2023 WL 4420348, at *6 (S.D. Fla. July 8, 2023); *Smith*, 2010 WL 2401149, at *3. For these reasons, the stage of litigation (*Bennett* factor six) weighs in favor of granting preliminary approval.

11

      **2.**      **The Costs, Risks, and Delay of Further Litigation Strongly Favors Preliminary Approval**

Most class actions "involve a high level of risk, expense, and complexity, which is one reason judicial policy so strongly favors resolving class actions through settlement; indeed, 'there is an overriding public interest in settling class action litigation, and it should therefore be encouraged.'" *Desue*, 2023 WL 4420348, at *7 (*quoting In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."). Thus, the third Rule 23 factor and the fourth *Bennett* factor "weigh[] in favor of approval where the case involves complex claims and lengthy litigation." *Taylor v. Serv. Corp. Int'l*, 2023 WL 2346295, at *4 (S.D. Fla. Mar. 3, 2023).

There can be no dispute that ERISA class action cases like this are particularly complex. As other courts have recognized, "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). Indeed, it is not unusual for these cases to extend for a decade or longer before final resolution.[5]

This case is a prime example of how the complexity of ERISA class actions lead to lengthy litigation and significant expenses. Plaintiff filed her original complaint more than four years ago. ECF No. 1. An appeal of this Court's summary judgment order remains pending before the Eleventh Circuit with no clear timetable for resolution. *See Johnson v. Russell Invs. Tr. Co.*, *appeal*

---

[5] *E.g.*, *Tussey v. ABB Inc.*, 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings more than ten years after suit was filed on December 29, 2006); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (noting that the case had originally been filed on September 11, 2006); *Shanechian v. Macy's*, 2013 WL 12178108, at *5 (S.D. Ohio June 25, 2013) (finding ERISA case that had already lasted for six years could last for six more years absent a settlement).

*docketed*, No. 25-10692 (11th Cir. Mar. 4, 2025). If Plaintiff prevails on appeal, she must still prevail at trial. "Given the complexity of the claims and arguments here, a lengthy trial would follow."[6] *In re Mednax Servs. Inc., Customer Data Breach Litig.*, 2024 WL 1554329, at *7. And as with other complex cases, "[t]he costs and expenses associated with a trial would have been enormous, including the costs and fees associated with the Class's experts and the presentation of evidence. These considerations militate heavily in favor of the Settlement." *Millstein*, 2022 WL 18024840, at *5 (citing *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988).

Class Counsel remains confident about the merits of the case but cannot ignore the inherent risks of litigation, including the substantial hurdles to successfully prosecuting this case in light of the Court's ruling on Russell's summary judgment motion. *See Millstein*, 2022 WL 18024840, at *5. Plaintiff's chances for success "turn[] on many factors," requiring a successful pre-trial appeal before prosecuting this case through trial and any appeals that followed. *See id.* The risks here were especially high because pursuing the case against Russell would require winning two separate issues on appeal: Russell's fiduciary status and whether any breach causes losses to the Plan. *See* ECF No. 273 at 14–15. Thus, there is a substantial risk that the Class "would have expended significant time and expense to obtain no recovery" from Russell. *Millstein*, 2022 WL 18024840, at *5. Any trial order would also be subject to appeal, which could further delay any recovery. It is not inconceivable that this case could continue for years absent a settlement. "Thus, the extensive and prolonged litigation conducted here favors preliminary approval*." In re Mednax Servs. Inc., Customer Data Breach Litig.*, 2024 WL 1554329, at *7.

In sum, "[t]he more complex, expensive, and time consuming the future litigation, the more

---

[6] Although a trial with the Non-Settling Defendants will still be time-consuming, it will be less time-consuming than a trial with the Non-Settling Defendants *and* Russell, both of whom have their own lawyers and witnesses.

beneficial the settlement becomes as a matter of efficiency to the parties and the Court." *M.D. v. Centene Corp., Inc.*, 2020 WL 7585033, at *6 (S.D. Fla. Oct. 7, 2020) (quoting *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013)). This factor weighs heavily in favor of granting preliminary approval.

### 3.    The Value of Recovery Strongly Favors Preliminary Approval

The proposed partial Settlement secures a recovery of $500,000.00 from a defendant that, pursuant to this Court's Order, bears no liability. ECF No. 273 at 24. This is a significant outcome in light of the potential risk that the Court's Order would be upheld on appeal. *See Borcea*, 238 F.R.D. at 673 ("[T]he existence of strong defenses to the claims presented makes the possibility of a low recovery quite conceivable."); *M.D.*, 2020 WL 7585033, at *6 (noting the "strength" of defendants' dispositive motion and the dismissal of a similar case decreased the likelihood of any recovery, supporting the adequacy and final approval of a lower settlement amount); *Burrow v. Forjas Taurus S.A.*, 2019 WL 4247284, at *9 (S.D. Fla. Sept. 6, 2019) ("It is important that the Court weigh the benefits Class Members will receive from the Settlement against the risks of litigating to final judgment and the Class Members recovering nothing.").

Moreover, Plaintiff will still be able to pursue the claims against the Non-Settling Defendants who—as this Court has made clear—have total fiduciary responsibility for the alleged misconduct. Thus, while the Court "must be mindful that inherent in compromise is a yielding of absolutes and an abandoning of highest hopes[,]" this partial Settlement is unique in that it guarantees some compensation without closing the door on securing a future recovery for the Class. *Millstein*, 2022 WL 18024840, at *3 (quoting *Assoc. for Disabled Ams., Inc., v. Amoco Oil Co.*, 2011 F.R.D. 457, 467 (S.D. Fla. 2002)).

Finally, "the fact that a proposed settlement amounts to only a fraction of potential recovery

does not mean the settlement is unfair or inadequate." *Ferron*, 2021 WL 2940240, at *10 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (table)). "Indeed, '[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.'" *Burrow*, 2019 WL 4247284, at *9 (quoting *Behrens*, 118 F.R.D. at 542); *e.g.*, *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to about 2% of damage calculation); *Behrens*, 118 F.R.D. at 542–43 (approving settlement equal to 3–5% of estimated loss). Unlike other cases, Plaintiff secured a percentage of the potential recovery while retaining the possibility of recovering additional Plan losses should she prevail on appeal and, ultimately, at trial.[7]

### 4.    The Proposed Plan of Allocation is Efficient and Effective

The proposed method of distributing relief and the method of processing claims will be both efficient and effective. Under the proposed Plan of Allocation, Settlement Class Members earn the added benefit of being automatically granted their *pro rata* share of the recovery without having to "file and substantiate an individual claim[,]" which "significantly lessens the burden on members of the class[.]" *Borcea*, 238 F.R.D. at 673. This factor supports preliminary approval.

### 5.    The Terms Concerning Attorneys' Fees and Costs Are Fair

The proposed partial Settlement allows Class Counsel to file an application with the Court for payment of reasonable attorneys' fees (not to exceed one-third of the Gross Settlement Amount) and for the reimbursement of the actual, reasonable, out-of-pocket costs and expenses that Class Counsel advanced in pursing this Action. *Supra* at 7. Any reimbursement to Class Counsel is contingent upon the Court's approval. *Id.*

---

[7] Depending on the damages model used, the $500,000 recovery represents between 1.3% and 4.2% of total damages sought against all defendants. *See Specht Decl.* ¶ 4.

15

Since executing the proposed partial Settlement, Class Counsel has independently and voluntarily determined they will _not_ request any attorneys' fees from the common fund for any of their efforts in this litigation. *Specht Decl.* ¶ 6. Instead, Class Counsel will only seek reimbursement for the out-of-pocket costs and expenses that they advanced on behalf of Class. *Id.*

It is well established that lawyers who recover a common fund for a class "are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999). Such expenses commonly include expert fees, e-discovery costs, court reporters, out-of-town travel, copying costs, or other expenses that are typically billed to clients in an hourly billing arrangement. *E.g.*, *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1258 (S.D. Fla. 2016); *Gevaerts v. TD Bank*, 2015 WL 6751061, at *14 (S.D. Fla. Nov. 5, 2015); *accord Sims v. BB&T Corp.*, 2019 WL 1993519, at *4 (M.D.N.C. May 6, 2019); *Hill v. State St. Corp.*, 2015 WL 127728, at *20–21 (D. Mass. Jan. 8, 2015). Those are precisely the type of expenses that will be sought here. *See Specht Decl.* ¶ 6.

Significantly, the Class will have an opportunity to review Class Counsel's motion for costs and administrative expenses at least fourteen (14) calendar days before the deadline for any objections to the partial Settlement; the Court will have an opportunity to review the same—and any objections thereto—at the Fairness Hearing prior to final approval. *Supra* at 7. As such, the terms concerning attorneys' fees and litigation expenses do not weigh against the preliminary approval of the partial Settlement. *See Colon v. Johnson*, 2024 WL 3315628, at *7 (M.D. Fla. May 31, 2024), *report and recommendation adopted*, 2024 WL 2890817 (M.D. Fla. June 10, 2024).

### 6.    There Are No Other Agreements Precluding Preliminary Approval

There are no agreements to disclose under Rule 23(e)(3). *See Specht Decl.* ¶ 31.

**D.      The Partial Settlement Treats Settlement Class Members Equitably**

The last Rule 23 factor examines whether the settlement is equitable. Fed. R. Civ. P. 23(e)(2)(D). The Partial Settlement allocates the Net Settlement Amount to Settlement Class Members on a *pro rata* basis. *See supra* at 5–6; *Kaplan v. Houlihan Smith & Co.*, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *Chesemore v. All. Holdings, Inc.*, 2014 WL 4415919, at *1 (W.D. Wis. Sept. 5, 2014), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016) (similar).

**III.     THE NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED**

In addition to reviewing the substance of the proposed Settlement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the partial settlement. *See* Fed. R. Civ. P. 23(e)(1). The "best notice practicable" under Rule 23 specifically includes "individual notice to all [class] members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here.

The Settlement Agreement provides that the Settlement Administrator, Analytics Consulting LLC, will provide direct notice of the Settlement to the Settlement Class via first class mail. *See Settlement Agreement* ¶ 3.2(b). This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Indeed, "the mailing of the Notice by regular first class mail to all Class Members at their last known address in [Defendants'] records constitutes valid, due and sufficient notice to Class Members… and complies fully with Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, and any other applicable law. No further notice to the Class Members is required." *Pinnock-Lee v. Phelan Hallinan, PLC*, 2015 WL 13776282, at *2 (S.D. Fla. June 26, 2015). Still, the Notice will also be supplemented by a Settlement Website and telephone support line. *See Settlement Agreement* ¶ 3.3.

The content of the Notice is also reasonable. The Notice includes, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a description of the claims being released; (5) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (6) the date, time, and location of the final approval hearing; (7) contact information for the Settlement Administrator; and (8) information regarding Class Counsel and the estimated amount of costs and expenses that Class Counsel will seek. *See Settlement at Exs. 1-2*. The content of the Notice is also consistent with other ERISA settlements that have been approved. *See Reetz v. Lowe's Cos.*, No. 5:18-cv-00075-KDB-DCK, ECF No. 234 (W.D.N.C. June 9, 2021) (approving substantially similar notice plan); *Brotherston v. Putnam Invs., LLC*, No. 1:15-cv-13825-WGY, ECF No. 220 (D. Mass. Apr. 29, 2020) (same); *Sims v. BB&T Corp.*, Nos. 1:15-cv-732, 1:15-cv-841, ECF No. 439 (M.D.N.C. Dec. 13, 2018) (same); *Moreno v. Deutsche Bank*, No. 1:15-cv-09936-LGS, ECF No. 335 (S.D.N.Y. Oct. 9, 2018) (same); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 3000490, at *6–7 (C.D. Cal. Feb. 6, 2018) (same). For these reasons, the Court should approve the Notice plan.

## IV.     THE SETTLEMENT CLASS IS CONSISTENT WITH THE CERTIFIED CLASS

The proposed Settlement Class is consistent with the certified Rule 23 class:

> All participants and beneficiaries of the Royal Caribbean Cruises, Ltd. Retirement Savings Plan at any time on or after October 1, 2015 through May 23, 2019, who had any portion of their account invested in the Russell Funds.

*Settlement* ¶ 1.47. The only differences between the Settlement Class and the Rule 23 class certified by the Court are (1) the inclusion of the date in which Russell was removed as the Plan's investment manager; and (2) the specification that the Settlement Class includes participants invested in Russell Funds, the funds that Plaintiff challenges and the only funds offered during the Class Period. ECF No. 161. Accordingly, the Settlement Class should be approved for the same

18

reasons the Rule 23 class was approved. *Id.*

## V.     THE COURT SHOULD ENTER AN APPROPRIATE BAR ORDER

"In the Eleventh Circuit, bar orders limiting or affecting non-settling parties' right are a necessary and permissible tool available to accomplish meaningful settlements[.]" *In re Jiangbo Pharms., Inc.*, 520 B.R. 316, 323 (Bankr. S.D. Fla. 2014), *aff'd sub nom*, *Brophy v. Salkin*, 550 B.R. 595 (S.D. Fla 2015). "If the cross-claims that the district court seeks to extinguish through the entry of a bar order arise out of the same facts as those underlying the litigation, then the district court may exercise its discretion to bar such claims in reaching a fair and equitable settlement." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 496 (11th Cir. 1992). That is the situation presented here.

Because the partial Settlement does not include the Non-Settling Defendants, the Settlement calls for entry of a bar order that forecloses any contribution or indemnification claims between Russell and the Non-Settling Defendants (other than contractual indemnity claims) and provides the Non-Settling Defendants with a setoff against any future judgment that may be entered against them. *See Settlement Agreement* ¶ 2.2(e). Significantly, the barred claims arise out of the same facts in this case and the bar order is necessary to facilitate partial settlement. Without it, Russell could be subject to future claims for indemnification or contribution, eliminating its incentive to settle with Plaintiff. *See In re U.S. Oil & Gas Litig.*, 967 F.2d at 495; *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 160 (4th Cir. 1991).

In this instance, the requested set-off will reduce any judgment entered against the Non-Settling Defendants by the greater of the Gross Settlement Amount or the amount that represents the proportionate share of fault that is attributable to Russell. *See Settlement* ¶ 2.4(g). In the particular context of this case, the terms of the proposed set off are fair. Courts frequently approve of the "proportionate share" set-off method, in which "each defendant pays damages corresponding to its degree of fault." *In re Greektown Holdings, LLC*, 728 F.3d 567, 576 n.7 (6th

Cir. 2013); Restatement (Third) of Torts: Apportionment Liab. § 16, cmt. c (2000).[8] "By ensuring that, at the end of the day, the non-settling defendants are not held responsible for any damages for which the settling defendants are proven liable, the judgment credit adequately compensates the non-settling defendants for their [barred] claims[.]" *Berman v. Smith*, 510 B.R. 387, 398 (S.D. Fla. 2014). And here, even if the Court's determination that Russell is not liable is unaffected by the evidence adduced at a trial with the Non-Settling Defendants, the terms of the proposed set off will still prevent a "double recovery" in the litigation of outstanding claims. *See In re U.S. Oil & Gas Litig.*, 967 F.2d at 494.

For these reasons, the Court should approve the requested bar order and proposed set off.

## CONCLUSION

Accordingly, Plaintiff respectfully requests that the Court (1) preliminarily approve the Settlement; (2) approve and authorize distribution of the proposed Notices; (3) schedule a final approval hearing; and (4) enter the Preliminary Approval Order, which includes approving an appropriate bar order that forecloses contribution or indemnification claims between Russell and the Non-Settling Defendants (other than contractual indemnity claims)and grants the Non-Settling Defendants an appropriate set off against any future judgment that may be entered against them.

---

[8] *See, e.g.*, *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 217, 221 (1994) (adopting the proportionate share approach under federal common law (admiralty), reasoning that "the proportionate share approach is superior.... Just as the other defendants are not entitled to a reduction in liability when the plaintiff negotiates a generous settlement, so they are not required to shoulder disproportionate liability when the plaintiff negotiates a meager one." (citation omitted)); *Gerber v. MTC Elec. Techs. Co.*, 329 F.3d 297, 303 (2d Cir. 2003); *Eichenholtz v. Brennan*, 52 F.3d 478, 486–87 (3d Cir. 1995); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1231 (9th Cir. 1989) ("The goal of equity is also satisfied. Settling defendants pay an amount to which they voluntarily agree. The bar on further contribution extinguishes further risk on their part. Nonsettling defendants never pay more than they would if all parties had gone to trial. This comports with the equitable purpose of contribution."); *see also, e.g.*, *Bowers v. Russell*, No. 1:22-CV-10457, ECF No. 575 at *3 (D. Mass Sept. 5, 2025) (noting "[w]here a bar order extinguishes a non-settling defendant's right to contribution, the proportionate share approach is generally favored.").

## <u>CERTIFICATE OF L.R. 7.1(a)(3) GOOD FAITH CONFERENCE</u>

Plaintiff's counsel certifies that they have conferred in good faith with Defendants' counsel, who advised that Defendants do not oppose this motion.

Dated: November 17, 2025        Respectfully submitted,

**WENZEL, FENTON, CABASSA, P.A**.
<u>s/ Brandon J. Hill</u>
**BRANDON J. HILL**
Florida Bar Number: 0037061
Direct Dial: 813-337-7992
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
bhill@wfclaw.com

**NICHOLS KASTER, PLLP**
Brock J. Specht, MN No. 0388343*
Ben Bauer, MN No. 0398853*
Elizabeth M. Binczik, MN No. 0398233*
* *admitted pro hac vice*
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
bspecht@nka.com
bbauer@nka.com
ebinczik@nka.com
ATTORNEYS FOR PLAINTIFF

21

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on November 17, 2025, I electronically filed the foregoing document via CM/ECF, which caused a true and correct copy to be served electronically upon all entitled parties.

/s/ <u>*Brandon J. Hill*</u>
Brandon J. Hill
