**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No.: 1:22-cv-21735-BB**

ANN JOHNSON, AS THE REPRESENTATIVE OF
A CLASS OF SIMILARLY SITUATED PERSONS,
AND ON BEHALF OF THE ROYAL CARIBBEAN
CRUISES LTD. RETIREMENT SAVINGS PLAN,

      Plaintiff,

v.

RUSSELL INVESTMENTS TRUST COMPANY
(F/K/A RUSSELL TRUST COMPANY), ROYAL
CARIBBEAN CRUISES LTD., AND ROYAL
CARIBBEAN CRUISES LTD. INVESTMENT
COMMITTEE,

      Defendants.

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

MOTION.................................................................................................................................1

INTRODUCTION .................................................................................................................1

BACKGROUND ...................................................................................................................2

I.      PROCEDURAL HISTORY..........................................................................................2

        A.  PLEADINGS AND COURT PROCEEDINGS................................................................2

        B.  DISCOVERY, CLASS CERTIFICATION, AND SETTLEMENT .......................................2

        C.  SETTLEMENT TERMS..........................................................................................3

II.     PRELIMINARY APPROVAL OF SETTLEMENT..........................................................5

III.    CLASS NOTICE AND REACTION TO SETTLEMENT .................................................5

ARGUMENT.........................................................................................................................6

I.      LEGAL STANDARD .................................................................................................6

II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE....................................7

        A.  THE LATE STAGE OF THE PROCEEDINGS ENSURES THERE IS NO FRAUD OR COLLUSION
            BEHIND THE SETTLEMENT (FACTORS ONE AND THREE) .......................................7

        B.  THIS CASE IS COMPLEX, EXPENSIVE, AND WOULD HAVE NEEDED TO CONTINUE FOR
            YEARS IN ORDER TO YIELD A POSITIVE OUTCOME FOR THE CLASS (FACTOR TWO).............8

        C.  THE SETTLEMENT IS A WIN FOR CLASS MEMBERS GIVEN THE PROBABILITY OF RECOVERY
            AND THE RANGE OF POSSIBLE RECOVERY (FACTORS FOUR AND FIVE) ...............10

        D.  ALL RELEVANT PARTIES SUPPORT THE SETTLEMENT (FACTOR SIX) .................11

III.    THE SETTLEMENT NOTICE WAS REASONABLE  ...................................................12

IV.     THE BAR ORDER PROVISIONS ARE APPROPRIATE ...............................................13

V.      THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS..............15

CONCLUSION....................................................................................................................15

ii

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Access Now, Inc. v. Claire's Stores, Inc.*,
　　2002 WL 1162422 (S.D. Fla. May 7, 2022) ........................................................7

*Behrens v. Wometco Enterprises, Inc.*,
　　118 F.R.D. 534 (S.D. Fla. 1988) .......................................................................10

*Bennett v. Behring Corp.*,
　　737 F.2d 982 (11th Cir. 1984) ...........................................................................7

*Borcea v. Carnival Corp.*,
　　238 F.R.D. 664 (S.D. Fla. 2006) ....................................................................9, 10

*Braynen v. Nationstar Mortgage*,
　　2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) .......................................................8

*Burrow v. Forjas Taurus S.A.*,
　　2019 WL 4247284 (Sept. 6, 2019) ....................................................................11

*Denney v. Deutsche Bank AG*,
　　443 F.3d 253 (2d Cir. 2006) .............................................................................14

*Desue v. 20/20 Eye Care Network, Inc.*,
　　2023 WL 4420348 (S.D. Fla. July 8, 2023) .......................................................13

*Diakos v. HSS Sys., LLC,*
　　2016 WL 3702698 (S.D. Fla. Feb. 5, 2016) ...........................................2, 8, 12

*Eichenholtz v. Brennan*,
　　52 F.3d 478 (3d Cir. 1995) ...............................................................................14

*Ferron v. Kraft Heinz Foods Co.*,
　　2021 WL 2940240 (S.D. Fla. July 13, 2021) .....................................................10

*Griffin v. Flagstar Bancorp, Inc.*,
　　2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ..................................................9

*Huang v. TriNet HR III, Inc.*,
　　2022 WL 13631836 (M.D. Fla. Oct. 21, 2022) ..................................................15

*In re Checking Account Overdraft Litig.*,
　　830 F. Supp. 2d 1330 (S.D. Fla. 2011) .........................................................7, 10

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................9, 10

*In re Domestic Air Transp.*,
    148 F.R.D. 297 (N.D. Ga. 1993)...............................................................................11

*In re Forta File Transfer Software Data Sec. Breach Litig.*,
    2024 WL 5362098 (S.D. Fla. Sept. 24, 2024) ........................................................12

*In re HealthSouth Corp. Sec. Litig.*,
    572 F.3d 854 (11th Cir. 2009) .................................................................................14

*In re Mednax Servs. Inc., Customer Data Breach Litig.*,
    2024 WL 1554329 (S.D. Fla. Apr. 10, 2024) ...........................................................9

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ...........................................................................13, 14

*In re TikTok, Inc., Consumer Priv. Litig.*,
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) .....................................................................13

*Johnson v. Russell Invs. Tr. Co.*,
    *appeal docketed*, No. 25-10692 (11th Cir. Mar. 4, 2025)........................................9

*Karpik v. Huntington Bancshares Inc.*,
    2021 WL 757123, (*S.D. Ohio Feb. 18, 2021)....................................................8, 11

*Krueger v. Ameriprise Fin., Inc.*,
    2015 WL 4246879 (D. Minn. July 13, 2015) ........................................................8, 9

*Lee v. Ocwen Loan Servs.*,
    2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) ........................................................12

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...............................................................8, 10

*M.D. v. Centene Corp., Inc.*,
    2020 WL 7585033 (S.D. Fla. Oct. 7, 2020).............................................................9

*Millstein v. Holtz*,
    2022 18024840 (S.D. Fla. Dec. 30, 2022) ..........................................7, 8, 10, 11, 12

*Moreno v. Deutsche Bank Americas Holding Corp.*,
    2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017)...........................................................11

iv

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)......................................................................................................12

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985)......................................................................................................12

*Pinnock-Lee v. Phelan Hallinan, PLC*,
    2015 WL 13776282 (S.D. Fla. Jan. 26, 2015) ...................................................................12

*Renfrew v. Toms*,
    109 F. App'x 143 (9th Cir. 2004)......................................................................................14

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
    297 F.R.D. 683 (S.D. Fla. 2014).............................................................................8, 10, 12

*Strube v. American Equity Inv. Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005).......................................................................................11

*Taylor v. Serv. Corp. Int'l*,
    2023 WL 2346295 (S.D. Fla. Mar. 3, 2023)........................................................................8

*Tibble v. Edison Int'l*,
    2017 WL 3523737 (C.D. Cal. Aug. 16, 2017).......................................................................9

*Tussey v. ABB, Inc.*,
    850 F.3d 951, 955 (8th Cir. 2017) .....................................................................................9

*Warrant v. City of Tampa*,
    693 F. Supp. 1051 (M.D. Fla. 1988)..................................................................................11

**Rules, Regulations, and Statutes**

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................................12

Fed. R. Civ. P. 23(e)(2)............................................................................................................7

**MOTION**

Plaintiff Ann Johnson ("Plaintiff") respectfully moves the Court for an Order granting final approval of the Partial Class Action Settlement Agreement between Plaintiff and Defendant Russell Investments Trust Company ("Russell") (collectively, the "Settling Parties"). *See* ECF No. 288-2. This motion is made under Federal Rule of Civil Procedure 23(e), this Court's Preliminary Approval Order dated December 4, 2025, ECF No. 290 ¶ 13, and Paragraph 2.4 of the Settlement Agreement, and it is based on the accompanying Memorandum of Law and authorities cited therein, the declarations of Brock J. Specht and Jeffrey Mitchell and exhibits attached thereto, and all files, records, and proceedings in this matter. A proposed Final Approval Order is being submitted in connection with this motion.

**INTRODUCTION**

On December 4, 2025, this Court preliminarily approved the Settling Parties' Partial Class Action Settlement Agreement ("Settlement Agreement"), which resolves Plaintiff's claims against Defendant Russell Investments Trust Company under the Employee Retirement Income Security Act ("ERISA") relating to the Royal Caribbean Cruises Ltd. Retirement Savings Plan ("Plan"). The Court found on a preliminary basis that the Settlement Agreement "is fair, reasonable, and adequate" and ordered that notice of the Settlement be sent to members of the Settlement Class. ECF No. 290, Order Prelim. Approving Am. Class Action Settlement ("Prelim. Approval Order") at ¶¶ 1, 4.

This Court should now grant final approval of the Settlement. The Settlement preserves the pending claims against the Non-Settling Defendants, which are on appeal before the Eleventh Circuit. And as discussed below, all of the criteria for final approval are satisfied, and events following this Court's decision to preliminarily approve the Settlement confirm that the Court's earlier analysis was correct. Indeed, the class Notice was sent to the 8,987 Settlement Class

1

Members identified by the Plan's recordkeeper, and none objected to the Settlement. Declaration of Brock J. Specht in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Third Specht Decl.") at ¶ 3; Declaration of Settlement Administrator in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Second Mitchell Decl.") ¶¶ 6-10, 13. The fact that "there has not been a single filed opposition to the settlement" strongly weighs in favor of approval. *Diakos v. HSS Sys., LLC,* 2016 WL 3702698, at *5 (S.D. Fla. Feb. 5, 2016).

Accordingly, Plaintiff respectfully requests that the Court grant her motion for final approval of the Settlement.

**BACKGROUND**

I.      **Procedural History**

     A.      **Pleadings and Court Proceedings**

Plaintiff filed this action on June 7, 2021, asserting claims against Defendants under ERISA. ECF No. 1, Compl. Plaintiff brought this action on behalf of the Plan pursuant to 29 U.S.C. § 1132(a) to recover losses to the Plan under 29 U.S.C.§ 1109(a) and to obtain other appropriate relief under ERISA. *Id.* On August 30, 2021, Plaintiff filed a First Amended Complaint. ECF No. 31, Am. Compl. On September 7, 2018, Defendants Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee (the "Royal Caribbean Defendants") moved to transfer the case from the Western District of Washington to the Southern District of Florida. The Court granted the Royal Caribbean Defendants' motion on March 15, 2022. ECF No. 68. Defendants filed answers to the Amended Complaint on April 19, 2023. ECF Nos. 109-110.

     B.      **Discovery, Class Certification, and Settlement**

The Parties have engaged in extensive fact and expert discovery. Defendants produced approximately 388,000 pages of documents, and Plaintiff produced over 12,000 pages of documents. ECF No. 302-1, Declaration of Brock J. Specht in Support of Pl's. Mot. for Costs,

2

Admin. Expenses, & Class Reps. Service Award ("Second Specht Decl.") ¶ 3. Class Counsel took nine fact witness depositions and defended the deposition of the named Plaintiff. *Id.* Class Counsel engaged three experts and assisted them in drafting their expert reports and either defended or deposed a total of seven expert witnesses. *Id.* Class Counsel also responded to Defendants' motions for summary judgment and *Daubert* motion. *Id.*

On March 22, 2024, Plaintiff moved for Rule 23 class certification. ECF No. 149, Pl's. Mot for Class Certification. Thereafter the Court entered an order certifying the Rule 23 class. ECF No. 161, Order Granting Motion for Class Certification.

The matter was scheduled for trial on February 10, 2025. ECF No. 134. On January 31, 2025—ten days before the trial was set to begin—the Court granted Defendants' motions for summary judgment and entered judgment for Defendants. ECF Nos. 273-74. Plaintiff filed a notice of appeal on March 3, 2025. ECF No. 276. That appeal remains pending as to the Non-Settling Defendants.

Meanwhile, during the early stages of this case, the parties attended an unsuccessful mediation with a professional mediator. ECF No. 288-1, Decl. of Brock J. Specht in Support of Pl's. Mot. for Prelim. Approval ("First Specht Decl.") ¶¶ 18-19. Russell's Counsel and Class Counsel continued engaging in arm's-length negotiations throughout the pendency of the case, leading to the present Settlement. *Id.* Counsel for the Settling Parties drafted a settlement agreement and exhibits thereto (including the settlement notices and proposed preliminary approval order) to resolve the claims against Russell. ECF No. 288-2.

### C.     Settlement Terms

Under the Settlement Agreement, Russell has agreed to contribute a Gross Settlement Amount of $500,000 to a Qualified Settlement Fund. ECF No. 288-2 ("Settlement") ¶ 1.25. After accounting for Costs, Service Awards, and Administrative Expenses, the remaining sum ("Net

3

Settlement Amount") will be distributed to eligible Settlement Class Members. *Id.* at ¶¶ 1.27, 3.4.

The Settlement and Plan of Allocation call for a pro rata distribution of the Net Settlement Amount to Settlement Class Members based on Settlement Class Members' average quarterly balances in the Russell Funds during the Class Period. *Id.* at ¶ 5.1. Current Participants' accounts in the Plan will be automatically credited with their share of the Qualified Settlement Fund. *Id.* at ¶ 5.2 (b)-(c). Former Participant Class Members will receive their settlement payment directly by check. *Id.* at ¶ 5.3. If the dollar amount of the settlement payment to a Former Participant Class Member is calculated by the Settlement Administrator to be less than $5.00, then the Former Participant Class Member's pro rata share shall be zero for all purposes, and their share shall be reallocated amongst the other Settlement Class Members on a pro rata basis. *Id.* This avoids wasteful printing, processing, and postage costs for *de minimis* allocations.

In exchange for this relief, the Settlement Class will release Russell and the "Released Parties" as defined in ¶ 1.38 of the Settlement from all claims with respect to the Plan arising on or before the date of the preliminary approval "that were asserted in the Action against Russell or could have been asserted in the Action[,]" "that would be barred by *res judicata* based on the Court's entry of the Final Approval Order[,]" "that arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan of Allocation." *Id.* ¶ 1.31. Certain claims, including those to enforce the Settlement, are excluded from the release. *Id.*

In addition, the Settlement calls for entry of a Bar Order to address potential clams for contribution or indemnity between Russell and the Non-Settling Defendants. *See* Settlement ¶ 2.4(g). The requested set-off will reduce any judgment entered against the Non-Settling Defendants by the greater of the Gross Settlement Amount or the amount that represents the

4

proportionate share of fault that is attributable to Russell. *Id.*

## II.    Preliminary Approval of Settlement

Plaintiff filed a motion seeking preliminary approval of the partial settlement with Russell on November 17, 2025. ECF No. 288, Pl's.' Mot. for Prelim. Approval of Partial Class Action Settlement with Russell. The Court granted the motion and preliminarily approved the settlement on December 4, 2025. ECF No. 290, Prelim. Approval Order. In its Order, the Court preliminarily certified the Settlement Class for settlement purposes and found that the terms of the Settlement were sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed Settlement to the Settlement Class. *Id.* at ¶¶ 1-4. In addition, the Court appointed Analytics Consulting LLC ("Analytics") to serve as the Settlement Administrator, distribute the Settlement Notices, and carry out the other administrative duties specified by the Settlement Agreement. *Id.* at ¶¶ 4-5, 7.

## III.    Class Notice and Reaction to Settlement

Pursuant to the Court's Order preliminarily approving the Settlement, Analytics distributed the approved Settlement Notices to each of the Settlement Class Members identified by the Plan's recordkeeper. See Second Mitchell Decl., ¶¶ 6-10.[1] In total, Analytics mailed Notices to 8,987 Settlement Class Members. *Id.* at ¶ 7. In the event that any Notices were returned, Analytics remailed the Notice to any forwarding address that was provided and utilized a skip trace in an attempt to ascertain a valid address for the Settlement Class Member in the absence of a forwarding address. *Id.* at ¶¶ 8-9. As a result, the notice program was very effective. Out of the 8,987 Notices, only 206, or approximately 2.29%, were ultimately undeliverable despite Analytics' efforts to

---

[1] Russell also caused Analytics to send the required CAFA notices to federal and state authorities on November 25, 2025. See ECF No. 297-1, Declaration of Jeff Mitchell ¶ 2 ("First Mitchell Decl.").

verify and update address information. *Id.* ¶ 10.

Different Notices were mailed to Participant Class Members and Former Participant Class Members. *Id.* at ¶ 7, Ex. 1-2. The Notice provided to Participant Class Members informed them of their current Plan account status and that settlement benefits would be automatically distributed to their Plan accounts after the final approval of the Settlement. *Id.* at ¶ 7, Ex. 1. The Notice provided to Former Participant Class Members informed them of their former Plan account status and that their settlement benefits would be distributed to them in the form of a mailed payment. *Id.* at ¶ 7, Ex. 2. Both notices informed Class Members that Class Counsel would seek reimbursement from the Qualified Settlement Fund for Class Counsel's costs and expenses, estimated to be "around $350,000." *Id.*, Ex. 1 at 3, Ex. 2 at 3.

In the event that any Settlement Class Members desired further information, Analytics established a Settlement Website at https://royalcaribbean401ksettlement.com/ which included, among other things, various Settlement documents filed with the Court, key dates and deadlines, answers to frequently asked questions about the Settlement, and information on how to contact Class Counsel and Analytics. *Id.* at ¶ 11. In addition, Analytics created and maintained a toll-free telephone support line (833-583-9302) as a resource for Settlement Class Members seeking information about the Settlement. *Id.* at ¶ 12. This telephone number was referenced in the Notices and also appears on the Settlement Website. *Id.*

The deadline to file objections to the Settlement was June 15, 2026. ECF No. 290, Prelim. Approval Order ¶¶ 8-9. That deadline has now passed, and there have been no objections to the Settlement. Third Specht Decl. ¶ 3; Second Mitchell Decl. ¶ 13.

## ARGUMENT

### I.    Legal Standard

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any

6

settlement agreement that will bind absent class members. Fed. R. Civ. P. 23(e)(2). Federal Rule

of Civil Procedure 23(e)(2) identifies four factors considered in making such determination: (1)

adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and

(4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). Courts have interpreted

this to mean that "'[a] class action settlement [] should be approved so long as it is fair, adequate,

and reasonable and is not the product of collusion between the parties.'" *Millstein v. Holtz*, 2022

18024840, at *3 (S.D. Fla. Dec. 30, 2022) (quoting *Access Now, Inc. v. Claire's Stores, Inc.*, 2002

WL 1162422, at *4 (S.D. Fla. May 7, 2022)).

To determine whether a settlement is fair, reasonable, and adequate under Rule 23, "courts

in this circuit look to six factors: (1) the existence of fraud or collusion behind the settlement; (2)

the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and

the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the

range of possible recovery; and (6) the opinions of class counsel, class representatives, and the

substance and amount of opposition to the settlement." *Id*. (*citing In re Checking Account

Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011)). When analyzing these factors,

courts also keep in mind the "'strong judicial policy favoring settlement" in complex class action

cases "'as well as [] the realization that compromise is the essence of settlement.'" *Id*. (quoting

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

As discussed below, these factors favor approval of the Settlement in this case.

## II.     The Settlement is Fair, Reasonable, and Adequate

### A.     The Late Stage of the Proceedings Ensures There Is No Fraud or Collusion Behind the Settlement (Factors One and Three)

Courts consider the stage of the proceedings at which a settlement is reached "'to ensure

that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and

weigh the benefits of settlement against further litigation.'" *Millstein*, 2022 WL 18024840, at *5 (quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005)). Here, the parties had exchanged hundreds of thousands of documents, conducted nearly 20 depositions, briefed dispositive motions, and stood on the eve of trial before receiving the Court's summary judgment order. Simply put, "[t]his is not a class action that was settled before the parties fully understood the complexities of the litigation." *Diakos*, 2016 WL 3702698, at *5. This factor overwhelmingly supports approval.

The same evidence proves that the Settlement was not a result of fraud or collusion because "Class Counsel was well-positioned to evaluate the strengths and weaknesses of the Class's claims, as well as the appropriate basis upon which to settle them[.]" *Millstein*, 2022 WL 18024840, at *4. Further, the parties negotiated at arm's length and settled while the claims were on appeal. "'Where the parties have negotiated at arm's length[,]'" as they have here, "'the Court should find that the Settlement was not the product of collusion.'" *Braynen v. Nationstar Mortgage*, 2015 WL 6872519, at *10 (S.D. Fla. Nov. 9, 2015) (quoting *Saccoccio v. JP Morgan Chase Bank*, *N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014)).

Accordingly, these factors strongly weigh in favor of approval.

### B. This Case is Complex, Expensive, and Would Have Needed to Continue for Years in Order to Yield a Positive Outcome for the Class (Factor Two)

The second factor "weighs in favor of approval where the case involves complex claims and lengthy litigation." *Taylor v. Serv. Corp. Int'l*, 2023 WL 2346295, at *4 (S.D. Fla. Mar. 3, 2023). This is undoubtedly a complex and lengthy case.

It is well-known that "'ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation.'" *Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *4 (*S.D. Ohio Feb. 18, 2021) (quoting *Krueger v. Ameriprise Fin., Inc.*, 2015 WL

8

4246879, at *1 (D. Minn. July 13, 2015)); *see also Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *8 (E.D. Mich. Dec. 12, 2013) ("The complexity of this ERISA litigation cannot be questioned[.]"). Because these cases are complex, it is not unusual for ERISA 401(k) cases to extend for a decade or longer before final resolution. *See, e.g., Tussey v. ABB, Inc.*, 850 F.3d 951, 955, 962 (8th Cir. 2017) (vacating and remanding the case for further proceedings more than ten years after the suit was filed in 2006); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *1, 15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007).

This case would likely be on a similar track. An appeal of this Court's summary judgment order remains pending before the Eleventh Circuit with no clear timetable for resolution. *See Johnson v. Russell Invs. Tr. Co.*, *appeal docketed*, No. 25-10692 (11th Cir. Mar. 4, 2025). In order to receive a favorable judgment, Plaintiff would need to first prevail on appeal. Then, "[g]iven the complexity of the claims and arguments here, a lengthy trial would follow." *In re Mednax Servs. Inc., Customer Data Breach Litig.*, 2024 WL 1554329, at *7 (S.D. Fla. Apr. 10, 2024). Indeed, "substantial time would have been required to try the case" and the class would incur "significant trial expenses consisting of the payment of expert witnesses[.]" *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006).[2] Any favorable outcome would have taken years to reach. And if Defendants were to appeal that outcome, it would delay any benefit to the Class by at least another year, and likely longer.

In sum, "'[t]he more complex, expensive, and time consuming the future litigation, the more beneficial the settlement becomes as a matter of efficiency to the parties and the Court.'" *M.D. v. Centene Corp., Inc.*, 2020 WL 7585033, at *6 (S.D. Fla. Oct. 7, 2020) (quoting *In re*

---

[2] Although a trial with the Non-Settling Defendants will still be time-consuming, it will be far less time-consuming than a trial with the Non-Settling Defendants *and* Russell, both of whom have their own lawyers and witnesses.

*Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013)). That is true in spades in this case. Thus, this factor weighs strongly in favor of approving the Settlement.

### C.      The Settlement is a Win for Class Members Given the Probability of Recovery and the Range of Possible Recovery (Factors Four and Five)

These factors ask courts to consider "the likelihood and extent of any recovery from the defendants absent ... settlement." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1349 (internal quotation omitted). In evaluating these factors, the Court "should evaluate the 'proposed settlement in its totality.'" *Saccoccio*, 297 F.R.D. at 693 (quoting *Lipuma*, 406 F. Supp. 2d at 1323). Here, that means considering the facts that (1) the Class will recover a portion of the alleged damages even though judgment has already been granted in favor of Defendants; and (2) the Class can still seek to recover the remaining portion of the alleged damages from the Non-Settling Defendants. This is a clear win.

First, "[t]he existence of strong defenses to the claims presented makes the possibility of a low recovery quite conceivable." *Borcea*, 238 F.R.D. at 673 (citations omitted). This is even more true where judgment has already been granted for Defendants, and "[t]he class would have faced significant risk of the dismissal being upheld on appeal." *Id*. Plaintiff has secured a guaranteed $500,000 despite this judgment. Depending on the damages model used, the recovery represents between 1.3% and 4.2% of total damages sought against all defendants. *See* First Specht Decl. ¶ 4. Even if this Settlement released all claims against all defendants, this recovery would still be a strong result for the Class given the procedural posture of the case. *See Millstein*, 2022 WL 18024840, at *6 ("'A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.'") (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988)); *Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240, at *10 (S.D. Fla. July 13, 2021) (quotation omitted) ("[T]he fact that a proposed

settlement amounts to only a fraction of potential recovery does not mean the settlement is unfair or inadequate."); *Burrow v. Forjas Taurus S.A.*, 2019 WL 4247284, at *9 (Sept. 6, 2019) ("[A] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.") (quotation omitted); *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to about 2% of damage calculation).

But this Settlement is uniquely beneficial because it does not release the claims against the Non-Settling Defendants. Plaintiff and the Class can still pursue a full recovery, minus the amount awarded through the Settlement. In this context, there is little downside to Settling the claims against Russell and guaranteeing some recovery on behalf of the Class. And even if the Eleventh Circuit reverses, Plaintiff and the Class still must prevail at trial in order to recover an uncertain amount of damages. Given the significant risks absent a settlement, this decision is a no-brainer.

### D.     All Relevant Parties Support the Settlement (Factor Six)

The positive response that the Settlement has received from Class Counsel, the Class Representative, and Settlement Class Members, further supports approval the Settlement.

Here, Class Counsel are "one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this." *Karpik*, 2021 WL 757123, at *9 (citing *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y. Sept. 5, 2017) (Nichols Kaster "are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans")). Such an "endorsement of well informed, experienced class action attorneys is strong support for the final approval of a settlement." *Millstein*, 2022 WL 18024840, at *6 (citing *Warrant v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988)); *see also In re Domestic Air Transp.*, 148 F.R.D. 297, 312-313 (N.D. Ga. 1993) ("The trial judge, absent fraud, collusion, or the like, should be hesitant

to substitute its own judgment for that of counsel.").

The reaction of the Settlement Class Members has also been overwhelmingly positive. "Obviously, a low number of objections suggests that the settlement is reasonable[.]" *Lee v. Ocwen Loan Servs.*, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015). Where there have been *zero* objections from the nearly 9,000 Class Members, as there are here, this factor strongly weighs in favor of approval. *See Diakos*, 2016 WL 3702698, at *5; *Saccoccio*, 297 F.R.D. at 694; *Millstein*, 2022 WL 18024840, at *6.

### III.    The Settlement Notice Was Reasonable

The Settlement Notice program also was reasonable and satisfied the requirements of Rule 23 and Due Process. The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). In other words, "[t]he best notice practicable is that which 'is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re Forta File Transfer Software Data Sec. Breach Litig.*, 2024 WL 5362098, at *10 (S.D. Fla. Sept. 24, 2024) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

As noted above, the Settlement Administrator mailed the Court-approved Settlement Notices to each of the Class Members. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985); *see also Pinnock-Lee v. Phelan Hallinan, PLC*, 2015 WL 13776282, at *2 (S.D. Fla. Jan. 26, 2015) ("[M]ailing of the Notice by regular first class mail to all Class Members at their last known address…constitutes valid, due and sufficient notice to the Class Members, and constitutes the best notice practicable under the circumstances[.]").

Further, the record reflects that approximately 97.71% of Settlement Notices were delivered. *See Second Mitchell Decl. ¶ 10.* "Courts recognize that reaching between 70% and 95%

12

of a class is reasonable, and the median is 87% reached on approved notice plans." *Desue v. 20/20 Eye Care Network, Inc.*, 2023 WL 4420348, at *8 (S.D. Fla. July 8, 2023) (citing *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1092 (N.D. Ill. 2021)). This confirms the effectiveness of the notice program.

The content of the Settlement Notice also was reasonable. The Notice included, among other things: (1) the nature of the claims; (2) the basic terms of the Settlement; (3) Settlement Class Members' right to object to the Settlement and the deadline for doing so; (4) the Class release; (5) the identity of Class Counsel and an estimate of the costs and expenses ($350,000) they anticipated seeking from the Settlement Fund in connection with the Settlement; (6) the amount of service award that may be sought for the Class Representative; (7) the date, time, and location of the final approval hearing; and (8) Settlement Class Members' right to appear at the final approval hearing and object. *See* Second Mitchell Decl. ¶ 7, Ex. 1-2. Notably, no Settlement Class Member has claimed that the Notices were deficient, and to the extent they had any questions, they could review the Settlement Website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel. This is more than sufficient to meet the Rule 23 standard.

## IV.     The Bar Order Provisions are Appropriate

Because the Settlement is a partial settlement that does not include the Non-Settling Defendants, the Settlement also calls for entry of a bar order that forecloses any contribution or indemnification claims between Russell and the Non-Settling Defendants, and provides the Non-Settling Defendants a setoff against any future judgment that may be entered against them. Settlement ¶ 2.4(g). "Modern class action settlements increasingly incorporate settlement bar orders such as the one at issue in this case." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 494 (11th Cir. 1992). "[B]ar orders play an integral role in facilitating settlement. Defendants buy little peace through settlement unless they are assured that they will be protected against codefendants' efforts

13

to shift their losses through cross-claims for indemnity, contribution, and other causes related to the underlying litigation." *Id.* Accordingly, "[a] district court may issue a settlement bar order against a nonsettling defendant after it makes a reasoned determination that it is fair and equitable to do so." *Id.*

The proposed bar order here is fair and equitable. "[A] bar order deprives a non-settling defendant of potentially valuable rights" in the form of cross-claims for contribution or indemnification, "and therefore, the non-settling defendant should be compensated." *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 861 (11th Cir. 2009). Here, although the bar order prohibits the Non-Settling Defendants from seeking contribution or indemnification from Russell should the Non-Settling Defendants ultimately be found liable, it also provides that any such judgment against the Non-Settling Defendants "shall be reduced by the greater of the Gross Settlement Amount or the amount that represents the proportionate share of fault that is attributable to Russell." Settlement § 2.4(g)(iii). The Eleventh Circuit has explicitly endorsed this approach, holding that a judgment credit "provides adequate compensation" for a bar order when the credit is "the greater of the settling defendants' … proportionate liability or the amount actually paid by [the settling defendants]." *In re HealthSouth*, 572 F.3d at 861-62. Other Circuits agree. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 274 (2d Cir. 2006) ("Ordinarily, the potential harshness of a bar order is mitigated by a judgment credit provision that protects a nonsettling party from paying damages exceeding its own liability."); *Renfrew v. Toms*, 109 F. App'x 143, 146 (9th Cir. 2004) ("Bar orders are appropriate so long as the court finds that (1) the settling defendants are settling in good faith, and (2) a 'proportionate share' approach is used at trial to determine the liability of non-settling defendants."); *Eichenholtz v. Brennan*, 52 F.3d 478, 487 (3d Cir. 1995) (approving bar order with a proportionate judgment reduction because the "proportionate fault rule is the

14

equivalent of a contribution claim; the non-settling defendants are only responsible for their portion of the liability"). The Court should approve the language of the proposed Bar Order here.[3]

## V.      The Court Should Reaffirm Its Certification of the Settlement Class

In its Order Preliminarily Approving the Class Action Settlement, the Court preliminarily certified the following Settlement Class:

> All participants and beneficiaries of the Royal Caribbean Cruises, Ltd. Retirement Savings Plan at any time on or after October 1, 2015 through May 23, 2019, who had any portion of their account invested in the Russell Funds.

ECF No. 290, Prelim. Approval Order ¶ 2. This preliminary certification was consistent with the Court's prior Order Certifying the Class, in which the Court concluded that: (1) the class is numerous; (2) there are common issues respecting the claims; (3) Plaintiff is typical of other class members; (4) Plaintiff is adequate to represent the class; (5) Class Counsel is competent and experienced; and (6) class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A-B) because Defendants owe uniform fiduciary duties to the class as a whole, and individual adjudications with respect to common issues would be dispositive of the interests of other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. ECF No.161, Order Certifying Class at 1-3; *see also Huang v. TriNet HR III, Inc.*, 2022 WL 13631836, at \*10 (M.D. Fla. Oct. 21, 2022) (finding ERISA 401(k) case a "classic case of certification under Rule 23(b)(1)(B)"). Nothing has changed in the interim. Accordingly, the Court should reaffirm its certification of the Settlement Class.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant final approval of the Settlement and enter the accompanying proposed order.

---

[3] The Bar Order language is incorporated into Paragraph 8 of the [Proposed] Order Granting Plaintiff's Motion for Final Approval of Class Action Settlement, submitted herewith.

## <u>CERTIFICATE OF L.R. 7.1(a)(3) GOOD FAITH CONFERENCE</u>

Class Counsel certifies that the parties have conferred in writing regarding the relief sought in this motion. Russell confirmed that it does not oppose the relief sought. The Non-Settling Defendants confirmed that they take no position on any of the issues presented.

Dated: June 22, 2026                      Respectfully submitted,

**WENZEL, FENTON, CABASSA, P.A**.
<u>s/ Brandon J. Hill</u>
**BRANDON J. HILL**
Florida Bar Number: 0037061
Direct Dial: 813-337-7992
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
bhill@wfclaw.com

**NICHOLS KASTER, PLLP**
Brock J. Specht, MN No. 0388343*
* *admitted pro hac vice*
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
bspecht@nka.com
ATTORNEYS FOR PLAINTIFF

16

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on June 22, 2026, I electronically filed the foregoing document via CM/ECF, which caused a true and correct copy to be served electronically upon all entitled parties.

/s/ *Brandon J. Hill*
Brandon J. Hill

17